Gainer M. Waldbillig (Utah Bar No. 04433)
Meghan A. Sheridan (Utah Bar No. 14315)
**W| LAW**
175 S. Main St.Suite 610
Salt Lake City, UT 84111
Telephone: (801) 532-9300
gmw@wlaw.net
mas@wlaw.net
*Attorneys for Southwest Airlines Co.*

---

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHERIE LYNN ANDERSON, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES CO., a foreign corporation; JOHN AND JANE DOES 1-10; ABC CORPORATIONS 1-10 and XYZ PARTNERSHIPS 1-10, <br><br> Defendants. | **SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Case Number: 2:18-cv-00921-BSJ <br><br> Judge: Bruce S. Jenkins |

Southwest Airlines Co. ("Southwest"), through counsel, and pursuant to Rules 7 and 56

of the Federal Rules of Civil Procedure, and DUCivR 56-1, submits its Reply Memorandum to

Plaintiff's Opposition to Southwest's Motion For Summary Judgment (Doc. No. 45)

("Opposition") and in support of Southwest's Motion for Summary Judgment (Doc. No. 41)

("Motion"), requests an order granting judgment in favor of Southwest and dismissing with

prejudice Plaintiff's negligence claim, as follows:

INTRODUCTION

Plaintiff is demanding a judgment against Southwest for allegedly negligent actions. Plaintiff does not get to just recite vague testimony and claim that is evidence to prove her case. Plaintiff describes her testimony, riddled with "I don't remember(s)," "maybe(s)" "I think so(s)," "I don't think so," "I thought," or "probably(s)" as "conclusively establishing negligence." Not only is Southwest not required to accept Plaintiff's vague "story" as true, but Plaintiff's speculative testimony cannot meet her burden of proof on a negligence claim or even an inference of negligence. Southwest should not be punished because no one can recollect this non-incident, including the captain who was allegedly walking right next to Plaintiff according to her testimony.[1] Southwest has responded in discovery with all of the information it knows about the incident.[2] Contrary to Plaintiff's assertion, Southwest is entitled to summary judgment

_____

[1] Plaintiff continuously imputes improper motives to Southwest because no one at Southwest can recall this incident. For instance, Plaintiff titles a section of the Opposition: "**Defendants are actively concealing evidence and witnesses**." (Opposition at pp. 20-23). Imputing improper motives is a violation of Utah's Standards of Professionalism and Civility ¶3: "Lawyers shall not, without an adequate factual basis, attribute to other counsel or the court improper motives, purpose, or conduct . . . Neither written submissions nor oral presentations should disparage the integrity, intelligence, morals, ethics, or personal behavior of an adversary unless such matters are directly relevant under controlling substantive law." Southwest does not want to waste the Court's time on Plaintiff's, unfounded, un-professional, and un-civil claims that have nothing to do with this Motion, however, Southwest attaches its Discovery Responses here (Ex. A) including interrogatories that have been verified under oath regarding its knowledge of this incident.

[2] For instance, **INTERROGATORY NO 1,** requests: Describe the details of the accident at issue in your own words. Your response must include the date, time, location, weather conditions, lighting conditions, individuals and witnesses present, and the state of the equipment and facilities in use pertaining to the accident.

**ANSWER TO INTERROGATORY NO. 1:** Southwest objects on the bases that the question is overly broad, vague, ambiguous, irrelevant, and better suited for a deposition. Subject to the foregoing objections, Southwest has no independent recollection of the accident at this time, other than the following: when Plaintiff was walking up to board the plane, she exhibited some distress to the Flight Attendant standing in the boarding doorway. The Flight Attendant asked Plaintiff what was wrong and Plaintiff showed the Flight Attendant the hematoma on Plaintiff's leg. The Flight Attendant notified the Operations Supervisor to call paramedics. The paramedics were called and the paramedics cleared Plaintiff to fly to Phoenix. The Flight Attendant offered Plaintiff a bag of ice for her comfort, as an accommodation. The Flight Attendant periodically

because, based on Plaintiff's testimony, there is not enough evidence to prove negligence as a matter of law. Indeed, the cases Southwest discusses in its Motion, grant summary judgment for defendants based on plaintiffs' speculative claims; Southwest is not required for summary judgment to produce a contrary set of facts. (Motion at p. 8). "[B]are contentions, unsupported by any specification of facts in support thereof, raise no material questions of fact as will preclude entry of summary judgment." *Vanicsek v. Wal-Mart Stores, Inc.*, 2010 U.S. Dist. LEXIS 30123, *7, 2010 WL 1329939 (D. Utah March 29, 2010) (citations and quotations omitted).[3]

In the alternative, however, Plaintiff's case should be dismissed because her claims are preempted by federal law. With respect to preemption under the Airline Deregulation Act, Plaintiff does not address her claims in the context of the test to determine if a negligence claim is preempted – whether it is related to a price, route, or service. Plaintiff contends that the ADA does not preempt personal injury torts, but fails to acknowledge the cases from the 10th circuit where personal injury claims were preempted. She makes red herring arguments regarding the antiquated savings clause and the FAA's insurance requirements that are not determinative of preemption. What is determinative of preemption — is whether the claim is related to a price, route, or service, where here, Plaintiff's complaints of a situation inside the passenger boarding bridge relates to Southwest's procedures for boarding customers efficiently and in a manner that gives Southwest an operational and competitive advantage over its airline rivals, including the ability to provide lower fares.

---

checked on Plaintiff throughout the flight and does not recall any other issues or complaints from Plaintiff during the flight.

[3] "It is regrettable that plaintiff suffered injuries. However, not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages." *Id.* at *8 (citations and quotations omitted).

With respect to the Air Carrier Access Act, Plaintiff is stuck on the narrow proposition that it only applies to claims for discrimination, however this is not determinative of ACAA preemption. Plaintiff herself recognizes (Opp. at p. 27) that the Federal Aviation Administration preempts claims where the regulations are pervasive. And here, the ACAA provides comprehensive regulations regarding carriers' obligations to provide boarding and deplaning assistance. Plaintiff's complaints regarding how Southwest was completing its wheelchair boarding procedures, including regarding the role speed may have played, runs right into the pervasive federal regulations of the ACAA. Plaintiff cannot invoke some other legal source (i.e., state common law) to establish the duty to which airlines are held in the provision of those mobility assistance services, thus her claims are preempted.

RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND OBJECTION TO PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

Other than some background facts to describe Southwest's business practices, whether in the Introduction[5] or Defendant's Undisputed Facts, Southwest's facts are based on Plaintiff's testimony with citations to her deposition and direct quotations for the most part. Southwest is just citing to the record; and describing a situation that Plaintiff cannot fully remember, as Plaintiff's "facts," are couched with "I don't remember(s)," "maybe(s)" "I think so(s)," "I don't think so," "I thought," or "probably(s)" more times than can be counted.

---

[4] The response and objection are together here because they are based on the same cited facts in the record.

[5] While Defendant is not required to cite to undisputed facts in the Background section (or Introduction), most of the facts it cites are direct quotes from Plaintiff's deposition. The Court permits a "background" section that need not be limited to undisputed facts and need not cite to evidentiary support. DUCivR 56-1 (b)(2). ("Background (Optional): Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Relief Sought section and the Statement of Undisputed Material Facts."

On the other hand, while Southwest quotes Plaintiff's deposition testimony in its Statement of Undisputed Facts, Plaintiff's Response to Defendant's Statement of Material Facts is based on inferences, and does not provide, "a citation with particularity to the evidence upon which the non-moving party relies to refute that fact." DUCivR 56-1(c)(3). More importantly, Plaintiff does not even respond if she disputes[6] Southwest's Statement of Facts per DUCivR 56-1(c)(3), because she can't. She can't provide "a citation with particularity to the evidence upon which the non-moving party relies to refute that fact," because Southwest's facts are based on Plaintiff's very own quoted deposition testimony. DUCivR 56-1(c)(3). Plaintiff's only response is an objection. As described herein, Plaintiff's objections are not well-taken, and are improper, because the rules require a response whether the fact is disputed. DUCivR 56-1(c)(3). Further because these facts are not disputed, they should be deemed admitted, which includes all of Southwest's facts in its Motion aside from Fact No. 14.

For instance, Plaintiff objects to ***Southwest's Statement of Fact No. 9.*** "Plaintiff when asked, did not identify anything she did to yield to the oncoming wheelchair," as follows:

> **Plaintiff's Response:** Objection. Again, Plaintiff answered the questions she was asked but that testimony is not and cannot be deemed to be the entire scope of her testimony. Proper detailed follow up questions would have likely revealed more details. It is improper for Defendant to inject its own bias or to imply that Plaintiff's testimony at deposition is somehow every minute detail of her entire knowledge. This statement is also argumentative as it attempts to create and impose a legal duty on the Plaintiff that did not exist. This statement also mischaracterizes the unrebutted testimony. Plaintiff testified, —I felt like I was safe by the captain, I thought. Moreover, her answer on which this statement relies was a response to a properly objected to argumentative and speculative question by opposing counsel. This fact is therefore not admissible. Plaintiff also —thought there was enough room to get by the negligent employee. Plaintiff was also never asked to identify everything she did to yield to the oncoming wheelchair. Finally, there is no evidence in the record that Plaintiff had either a duty or an opportunity to yield to the oncoming wheelchair. On the contrary, the evidence on record shows that it was Defendant's negligent employee who had

---

[6] Plaintiff disputed one fact, No. 14, addressed below.

the duty to yield to the Plaintiff since he was the one pushing the dangerous equipment that injured her.

Opposition at p. 8.

**SOUTHWEST'S REPLY**: *See* Plaintiff's deposition testimony below which contradicts this objection. Plaintiff was asked twice if she moved or moved out of the way. She was given a third opportunity to testify if she tried to move out of the way, but testified: "I felt like I was safe by the captain, I thought."

**Q.   Did you move when you saw him coming?**
   A.   Well, he wasn't aiming for me I don't think.
**Q.   I mean it's pretty small in there in the jet bridge. Did you try and move out of the way?**
   A.   He was pretty close to the wall, I thought, but I don't know.  I don't know what happened.  I'm thinking that the leg things were sticking out. I don't know if they stick out, but it was a metal, the heavy metal ones.
**Q.   So you thought there was enough room for him to get by?**
   A.   Oh, yes.  I didn't have any worry that -- like I said, the captain was pushing my husband and we were probably visiting.
**Q.   You were talking to the captain?**
   A.   Probably.
**Q.   Maybe you should have been walking behind the captain.**
  MR. STEPHENSON:  Objection.  Speculation and argumentative.
THE WITNESS:  I felt like I was safe by the captain, I thought.

Anderson Depo. at 95:17-96:15 (Doc. 36-1)

Another example, Plaintiff objects to ***Southwest's Statement of Fact No. 17.*** "The captain who was pushing her husband down the boarding bridge, in the wheelchair, and walking right next to Plaintiff, did not notice that Plaintiff and the wheelchair came into contact (even though Plaintiff allegedly screamed out in pain)."

**Plaintiff's Response:** Objection. It is wholly inappropriate and in violation of the plain language of Rules 11 and 56 for Defendant to set forth argument in a Statement of Undisputed Facts—especially when that argument is directly refuted by the undisputed testimony. Plaintiff screamed out in pain when the wheelchair hit her. That is not an alleged event—it is an undisputed fact. Plaintiff felt like she had been shot. Furthermore, Defendants are actively concealing the identity and whereabouts of the captain. He has therefore never testified whether he noticed the accident or not. It is improper for

Defendant's counsel to testify on his behalf in this manner about what the captain noticed or did notice. Counsel has no personal knowledge of this case and is therefore incompetent to testify.

Opp. at p. 12.

**SOUTHWEST'S REPLY:** *See* Plaintiff's deposition testimony below, which Southwest's

Statement of Fact No. 17 is based on. Contrary to Plaintiff's assertion, the Defendant's counsel is

not "testifying on the captain's behalf." Defendant's counsel is citing to Plaintiff's deposition

testimony where she was asked numerous times about the captain's reaction to her allegedly

being "smashed into" with the wheelchair.

**Q.   Did you scream out in pain?**
A.   Oh, yes.  Uh-huh (Affirmative).
**Q.   And who was the first person that --**
A.   The stewardess.
**Q.   The stewardess was right there?**
A.   Yes. I don't even know if the captain really knew so much what was happening to me.
**Q.   He didn't say anything to you when you screamed out in pain?**
A.   I remember the stewardess mostly.
**Q.   And so the captain didn't say anything to you?**
A.   I don't remember him saying anything.

**Q.· · Did anyone else see it hit you, the wheelchair?**
· · · A.· · There was a girl on the plane that offered to give me her name and I didn't.

Anderson Depo. at 97:16-25; 99:3-5; 98:7-10.

In another example, **Southwest's Statement of Fact No. 7,** Southwest quotes directly

from Plaintiff's depo "Plaintiff describes the wheelchair attendant only in the vaguest of terms:

'foreign maybe,' '[p]robably forties,' with dark skin ('I think he was dark'), and 'wearing

whatever the attire that the other ones were wearing.'"

> **Plaintiff's Response:** Objection. This improperly and argumentatively
> includes Defendant's counsel's personal opinion and characterization of
> Plaintiff's testimony. It is also scandalous since it attempts to portray
> Plaintiff's testimony as racist. Plaintiff's unrebutted testimony is that the
> negligent employee was employed by Defendant and her description of
> him was anything other than vague. She described his approximate age,

hair color, complexion, indicated he was "foreign maybe" and definitively identified his uniform as "wearing whatever attire that the other ones [employees] were wearing." There is nothing in the record whatsoever to rebut that testimony.

Opp. at pp. 6–7.

**SOUTHWEST'S REPLY:** *See* Plaintiff's deposition testimony below, which is the sum total testimony of her description of the person pushing the wheelchair and her identification of him as an "alleged Southwest employee."

A.    I want to say he was foreign maybe, but I'm not positive. He was wearing whatever the attire that the other ones were wearing and I don't remember if it was a vest or jacket or what it was. I just knew that he was with Southwest.

**Q.   And how old, approximately?**
A.    Probably forties.  Thirty-five to forty. Maybe 40.

**Q.   Color of hair, skin?**
A.    Dark.

**Q.   Dark?**
A.    Yes, I think.  I think he was dark.

**Q.   Did he have an accent?**
A.    Oh, I don't know.  I don't think he talked to me.

Anderson Depo. at 95:10-96:1.

Including when asked if he had an accent she stated, "Oh, I don't know. I don't think he talked to me." Her testimony is far from clear or concrete on any specific description of who was pushing the wheelchair – using words such as "I'm not positive," or "I don't remember(s)." How would she even know he was "foreign," without talking to him? What does that even mean for identifying a person. Plaintiff refuses to admit that she is drawing huge leaps from an incomplete memory (as with the rest of her story). This repetitive speculation seems especially evident with respect to her pronouncement that the wheelchair pusher was "an employee of Southwest." If the "clarity" of this fact were so obvious from Plaintiff's testimony alone, why did her attorney find it necessary to *alter* her testimony by inserting the assumed fact, in brackets, as he says,

"Plaintiff testified very clearly that — He was wearing whatever the attire that the other ones

**[employees of Southwest]** were wearing …" (Opp. at p. 16).

Finally, Plaintiff objects and disputes the following Southwest facts that demonstrate that

Plaintiff does not know how the accident happened.

**Southwest's Statement of Fact No. 8:** Plaintiff can only say —"I think I did. I think I saw him" as the man with the empty wheelchair approached.

> **Response:** Objection. It is patently false to claim that —Plaintiff can only say anything. In depositions parties are asked specific questions and they answer those specific questions. Their deposition testimony does not constitute or reveal everything they know about a matter. Plaintiff can— and will—testify to far more information about her case than Defendants gleaned in her deposition. Just because Defendants failed to ask for sufficient details during her deposition does not mean that information does not exist. Moreover, it is inappropriate for Defendant's counsel to inject her bias and opinions into a Statement of Undisputed Facts. Indeed, this entire fact is taken out of context and thus does not accurately portray the extent of Plaintiff's knowledge on the matter. Plaintiff obviously saw the negligent employee because she identified his appearance in detail. She also testified that she saw the negligent employee approaching her while "pushing" out a wheelchair, that "he was pretty close to the wall," that she "felt safe by the captain," that he was the only one coming out of the aircraft, and that when she was hit she screamed out in pain but still the negligent employee did nothing to check on her injuries. Plaintiff can, and actually did, say more than what this statement sets forth.
>
> Opp. at 7.

<u>**SOUTHWEST'S REPLY:**</u> *See* Plaintiff's deposition testimony below. The point is Plaintiff

waffles and guesses repeatedly on her testimony and cannot describe clearly how her injury

happened.

**Q.   I mean did you see him coming out with it?**
   A.    I think I did.  I think I saw him.  But you know, I was shocked, you know.  When I got hit and saw the pain of it, I was shocked, totally shocked.  And like I said, just absolutely -- you know.
   **Q.   Did you move when you saw him coming?**
   A.    Well, he wasn't aiming for me I don't think.

Anderson Depo. at 96:11-19

**Southwest's Statement of Fact No. 13.** Plaintiff cannot recall where in the passenger boarding bridge the accident happened, or how close she was to the boarding door.

> **Response:** Objection. This statement is not material for purposes of summary judgment. The exact spot inside the jet bridge where she was injured by Defendants negligent employee is also irrelevant. Plaintiff definitely testified she was in the jet bridge and not on the aircraft when she was injured.

> Opp. at 10.

**SOUTHWEST'S REPLY:** *See* Plaintiff's deposition testimony below. Plaintiff is incorrect; this fact is relevant. This fact may help confirm or deny which Southwest employees may have been present or it could help lend information regarding the mechanics of the accident, amongst other things. In addition, this fact demonstrates further Plaintiff's lack of concrete information involving the details of this incident.

**Q. How close you were to the door to get on?**
    A. I must have been -- you know, I don't know because -- I don't remember how long it was, but I just remember that I couldn't put my weight on my leg.

    Anderson Depo. 93:11-14

**Southwest's Statement of Fact No. 14.** Plaintiff does not know how the accident happened: "I don't know what happened."

> **Response:** Disputed. Plaintiff testified in detail about how the accident happened and that testimony is unrebutted. It is therefore false and in violation of Rule 11 for Defendant to pretend Plaintiff doesn't know how the accident happened. Plaintiff testified that Defendant's negligent employee crashed into her with an empty wheelchair when he was hurrying past her and there is nothing in the record to rebut that testimony. Plaintiff knows and testified exactly how the accident happened.

> Opp. at 10-11.

**SOUTHWEST'S REPLY:** Southwest is just quoting Plaintiff's deposition testimony. Plaintiff conclusively argues that she knows what happened, but her actual testimony demonstrates otherwise. No one, not even Plaintiff, saw what happened. In describing how she was injured,

Plaintiff testifies: "I thought like—I thought, what happened?" (Anderson Depo. 92:17-19). She

waffles, she speculates, she guesses on every detail of how she was actually injured, because she

doesn't know. Even though Plaintiff doesn't dispute **Southwest's Statement of Fact No. 15,** she

surmises there too, 'I'm thinking that the leg things were sticking out. I don't know if they stick

out, but it was a metal, the heavy metal ones.'

## **ARGUMENT**

The Court should grant summary judgment for Delta in this case because "there is no

genuine dispute as to any material fact claimed by Plaintiff and the movant is entitled to

judgment as a matter of law." F.R.C.P. 56(a). Although the court must "view the evidence and

draw any inferences in a light most favorable to the party opposing summary judgment, [the

opposing] party must identify sufficient evidence which would require submission of the case to

a jury." *Jensen v. Gale*, 2014 U.S. Dist. LEXIS 175701, *26 (D. Utah Dec. 18, 2014) (citations

omitted). "A plaintiff's failure to present evidence that, if believed by the trier of fact, would

establish any one of the [elements] of the prima facie case justifies a grant of summary judgment

to the defendant." *Niemela v. Imperial Mfg., Inc*., 263 P.3d 1191 (Utah App. 2011) (alteration in

original) (citation and internal quotation marks omitted).

I.      **Plaintiff's Testimony Full of "I don't remember(s)," "maybe(s)" and "I think so(s)," Does Not Even Meet the Standard For An Inference of Negligence Under Res Ipsa.**

Plaintiff argues repeatedly that her testimony is unrebutted, however, Plaintiff's wishy

washy "unrebutted" testimony does not actually contain the facts of Southwest's negligence.

Unrebutted, unclear facts, do not equal undisputed negligence. Contrary to Plaintiff's self-

serving arguments, when her testimony is closely examined, she does not know the details of

how this accident happened. She cannot take the leap that her "facts" can prove negligence

against Southwest. Southwest cites numerous cases in its Motion (Motion at p. 8) that Plaintiff

doesn't even attempt to distinguish because speculation on how an injury occurs is fatal to a negligence claim.

Plaintiff also claims that her "undisputed testimony" makes a res ipsa claim obvious because the injury would not have occurred if the person in control of the wheelchair had exercised reasonable care. First, there is no confirming evidence that a Southwest person was pushing the empty wheelchair. Second, people can be bumped into without negligence, in the case of a wheelchair, or otherwise. There is just not any evidence that the wheelchair pusher was not using reasonable care. Third, because Plaintiff does not exactly know how the injury occurred, her conduct on the jet-bridge may in fact have contributed to the injury (this is much different than a plaintiff who was unconscious during a medical operation and would not have an opportunity for any fault).[7] Contrary to her arguments, her vague testimony does rest upon a "mere choice of probabilities"[8] —from Plaintiff's quoted testimony, it can easily be inferred that she was at best distracted, and more likely completely inattentive, and it is just as likely that Plaintiff collided with the wheelchair as it is that the wheelchair impacted her.

## II.     Plaintiff's Claims Are Expressly Preempted by The ADA Because They Relate to Southwest's Pricing and Services

---

[7] "The very purpose of the doctrine of res ipsa loquitur is to allow a plaintiff who may have been unconscious or incapacitated during an operation the opportunity to establish negligence and causation by circumstantial evidence." *Dalley v. Utah Valley Regional Medical Ctr.*, 791 P.2d 193, 197 (Utah 1990).

[8] "The requisite foundation for a res ipsa instruction 'cannot rest upon speculation or conjecture, nor upon a mere choice of probabilities.'" *Walker v. Parish Chem. Co.*, 914 P.2d 1157, 1163, (1996 Utah App.) (citation omitted). "Confronted with two plausible explanations, one suggesting defendant's negligence and one not, the trial court was correct in finding that res ipsa loquitur was inappropriate in this case." *Kelly v. Am. Airlines, Inc.*, 508 F.2d 1379, 1380 (5th Cir. 1975).

Plaintiff conclusively argues that the Airline Deregulation Act "narrowly"[9] preempts issues related to a price, route, or service of an air carrier and does not preempt personal injury claims. To be sure, personal injury claims won't be preempted if they are not related to a price route or service. But this is not the case here. Indeed in Morales, the Court characterized the "relates to" language as having a "broad scope," an "expansive sweep," and being "deliberately expansive" and "conspicuous for its breadth." *Morales,* 504 U.S. 374, 384. As further acknowledged by the Tenth Circuit, that the Supreme Court interpreted 49 U.S.C. § 41713(b)(1) broadly to preempt "all State enforcement actions having a connection with or reference to airline rates, routes, or services" *Arapahoe County Pub. Airport Auth. v. F.A.A.*, 242 F.3d 1213, 122211 (10th Cir. 2001) (quotations omitted, citing *Morales*, 504 U.S. at 383-84).

Plaintiff is hung up that the "savings clause," that was included in a predecessor act of the ADA, prior to the preemption provision being added in 1978 (Opp. at p. 32), ***assures*** that personal injury actions would not be preempted. Nothing about the "savings clause" assures this, and in fact the Supreme Court in *Ginsberg* notes: "[the] Aviation Act's general remedies saving clause is 'a relic of the pre-ADA/no pre-emption regime,' that 'cannot be allowed to supersede the specific substantive pre-emption provision,'" 572 U.S. 273, 274 (2014) (quoting *Morales*, 504 U. S., at 385, 112 S. Ct. 2031, 119 L. Ed. 2d 157).

Plaintiff string cites many cases, which she doesn't even explain, claiming that "the overwhelming majority of courts interpreting [the] preemption clause have . . . explicitly ruled —that claims for personal injuries are not covered by this preemption clause." (Opp. at p. 30, fn. 109). Notably, not included in Plaintiff's analysis, are the 10th Circuit District Court cases

---

[9] Plaintiff argues this, but does not cite to any ADA cases that explicitly stand for this.

(specifically a recent case form this very Court)[10] that contravene her sole premise, and involve ADA preemption of personal injury claims.[11]  Regardless, the test for determining whether a particular claim is preempted by the ADA, is not whether the claim is a personal injury claim or not— the test is whether the claim is related to a "price, route, or service of an air carrier." *Gardner* at 1318. (citing 49 U.S.C. § 41713(b)(1)). Plaintiff fails to argue, pursuant to the case law, why Plaintiff's claim here is not related to Southwest's pricing and boarding services as described in Southwest's MSJ (MSJ at p. 13).

Plaintiff gives short shrift to the cases in our very own district that hold preemption of personal injury claims. *Gardner v. United States*, 316 F. Supp. 3d 1308 (D. Utah 2018); *Sawyer v. Sw. Airlines Co*., 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003), aff'd, 145 F. App'x 238 (10th Cir. 2005). In *Gardner and Sawyer*, plaintiffs claimed that the airlines' employees' negligent actions caused their injuries. In *Gardner*, plaintiff claimed that Delta did not use reasonable care in dealing with a Federal Air Marshal that had harassed and threatened plaintiff during the flight, and Delta's negligent actions caused emotional distress and physical ramifications therefrom. 316 F. Supp. 3d 1308. In *Sawyer*, plaintiff claimed that Southwest did not use reasonable care with passenger assistance and direction in the boarding process, which caused plaintiff injury. *Sawyer,* 2004 U.S. Dist. LEXIS 128, at *6. Even where *Gardner* and *Sawyer* involved personal

---

[10] *Gardner v. United States*, 316 F. Supp. 3d 1308 (D. Utah 2018)

[11] Plaintiff cites, *France v. Trans States Airlines, LLC*, 2019 U.S. Dist. LEXIS 200305, *1, 2019 WL 6130803 (D. Colorado), where the allegations were that the airline negligently allowed the temperature inside a passenger plane delayed on the Denver International Airport tarmac to rise to a dangerous level, causing an infant child to overheat and  suffer physical injuries. The defense did not appear to argue clearly how these claims related to a price, route, or service, and the court held that there is no conflict between federal law and state law because plaintiff's arguments are based on a violation of a federal airline safety regulation, and under these circumstances, there is no danger that the Defendant Airlines will be held to inconsistent or conflicting standards of behavior across the country. *Id.* at *30. Here, Plaintiff has not asserted a violation of a federal airline safety regulation.

injury negligence claims, Gardner and Sawyer's negligence claims were preempted because the allegations related to services of the air carrier. Similarly, here, Plaintiff claims that a Southwest employee was acting negligently when assisting passengers in the boarding process, which caused her injury (SOF ¶¶10, 11, & 16). Plaintiff's claim is no different than the personal injury claims against the airline employees in *Gardner* and *Sawyer*, that "related to a price, route or service."

Plaintiff is also stuck on the FAA requirement for air carriers to obtain insurance for "bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the ***operation or maintenance*** of [an] aircraft." 49 U.S.C. § 41112(a). Plaintiff is correct that the cases say that "[s]uch a requirement would be 'pointless,' unless Congress expected that ***some*** state tort actions would survive the enactment of the ADA." *Charas*, 160 F.3d at 1265; *accord Hodges*, 44 F.3d at 338 ("A **complete preemption of state law [claims for personal injury]** would have rendered any requirement of insurance coverage nugatory."). Indeed, "**some**[12] state tort actions can survive preemption." The insurance requirement, the savings clause, or otherwise, however, do not provide blanket immunity from ADA preemption for tort claims—it is a case by case analysis to determine if the tort claim is related to a price, route or service. Whereas, here, this is exactly the case.

Critically, Plaintiff fails to address how her claims that a Southwest employee injured her while quickly pushing a wheelchair past her while she was boarding the flight, do not relate to

---

[12] Judge Parrish recognized this in the Gardner analysis as well, that there is not a blanket rule either way and the test is whether the claims are related to a price, route, or service. "Taken together, the above-mentioned cases suggest that some common-law claims, such as a claim for readmittance to a frequent flier program under a breach of the implied covenant of good faith and fair dealing theory, are preempted. Other claims, like negligent design of an aircraft leading to serious bodily injuries, are not preempted." *Gardner* at 1318.

Southwest's boarding procedures, which provide Southwest's ability to compete in the marketplace and provide lower prices for their flights. One component of Southwest's efficient, standardized, user-friendly process that enables the airline to offer its Customers low fares is quick aircraft turnaround. Plaintiff's effort to see that Southwest pays a price (through a verdict reduced to a judgment) for being "busy," and moving quickly to accommodate Customers, amounts to an effort to re-regulate the airline. In effect, what Plaintiff is claiming would necessitate an increase in fares if Southwest were required to make significant changes to its established processes of generating revenue. That is anathema to the ADA. For that reason, the claim is preempted. Her claims fall within the competitive marketplace that Congress intended to create with the ADA. *See Morales*, 504 U.S. at 378.

### III. The Standard of Ordinary Care is Preempted by the ACAA and Its Implementing Regulations Promulgated in 14 C.F.R. part 382

Plaintiff incorrectly argues that the ACAA only protects airlines from lawsuits for discrimination. In pitching this, she reads the ACAA too narrowly. The ACAA in fact, and legally, preempts claims where the substance of the claim, interferes with congressional intent to pervasively occupy the field. Not whether the claim involves discrimination. "The regulations promulgated under the ACAA, which implicate *both safety[13] and non-discrimination mandates*, establish with specificity an air carrier's obligations to provide disabled passengers with assistance 'as needed' in deplaning and to ensure disabled passengers are provided with

---

[13] Plaintiff didn't try to distinguish – or even acknowledge – *Lagomarsino v. Delta Airlines, Inc.*, which states that, "[t]he ACAA comprehensively addresses not only discrimination in the form of access to services and information, but also with respect to assisting disabled passengers in boarding, deplaning, and connecting to subsequent flights. See 14 C.F.R. §§ 382.11-25, 382.91-105." No. CV 19-3131-DMG (GJSx), 2020 U.S. Dist. LEXIS 73955, at *7 (C.D. Cal. Feb. 7, 2020)

'transportation between gates to make a connection' as requested. 14 CFR §382.95(a); 14 CFR §382.91. This extensive regulation is of the sort contemplated by the Ninth Circuit in *Martin* and *Montalvo*, implying an intent by Congress to preempt state-law in this area. Plaintiff's state-law claims, then, are preempted by the ACAA." *Johnson v. Nw. Airlines, Inc.*, No. C 08-02272 VRW, 2010 U.S. Dist. LEXIS 139808, at *17-18 (N.D. Cal. May 5, 2010) (emphasis added). Plaintiff is hard-pressed to argue that the regulations governing the use of wheelchairs are not pervasive, and that the substance of her negligence claim involving wheelchairs does not interfere with congressional intent to pervasively occupy this field.

Moreover, Plaintiff is just wrong in suggesting the ACAA is nothing more than an antidiscrimination statute that doesn't apply to personal injury claims. For example, in *Summers v. Delta Airlines, Inc.*, 805 F. Supp. 2d 874 (N.D. Cal. 2011), the plaintiff alleged "that she fell and incurred serious injuries due to the dangerous condition created by the step or gap and due to the lack of required assistance from flight personnel." In that case, the Court held that "[t]he ACAA regulates with specificity an airline's obligations with respect to boarding and deplaning assistance." *Id*. at 882.

Plaintiff mistakenly dismisses as "nonsense" the fact that there is no specific regulation that dictates precisely how a wheelchair is to be pushed, or that prohibits "airline employees [from running] through a small jet bridge while pushing a large metal wheelchair past other people."[14] However, Plaintiff misses the mark—for claims to be preempted there does not have

---

[14] Notably, in this case there is a specific regulation on point with respect to Plaintiff's claim that the wheelchair attendant was hurrying. Federal law requires that air carriers "*must promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability, or offered by carrier or airport operator personnel and accepted by passengers with a disability, in enplaning and deplaning. This assistance must include, as needed, the services of personnel and the use of ground wheelchairs…*" 14 C.F.R. § 382.95(a).

to be a specific regulation on point—the test is whether the general field is pervasively regulated. Plaintiff states, "[t]he Ninth Circuit has clarified that the FAA only preempts specific claims when the agency issues pervasive regulations in an area, like passenger warnings." *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc*., 555 F.3d 806, 812 (9th Cir. 2009), and attempts to distinguish this from the facts of our case. While Plaintiff cites *Martin*, it is really *Montalvo* that made this point. *Montalvo* shows the fallacy of Plaintiff's position. *Montalvo* involved allegations that airlines failed to warn passengers of risks of developing DVT as a result of immobility during flights. In fact, there were *no regulations* that required airlines to provide DVT warnings. The point was that the field – the "area" – involved (warnings given by airlines to passengers) was pervasively regulated, not that DVT warnings were, per se, the subject of regulation.

It was this aspect of Judge Walker's decision that the Ninth Circuit affirmed: "The FAA, together with federal air safety regulations, establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, states. The district court correctly held that *because there is no federal requirement that airlines warn passengers about the risk of developing DVT*, Plaintiffs' negligence claim fails as a matter of law." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007) (emphasis added). Where as here, there does not have to be a federal requirement on point with every detail of Plaintiff's claim for it to be preempted. Because federal law has issued pervasive regulations regarding wheelchair service, include boarding, deplaning, and connecting to subsequent flights, congress has intended to pervasively occupy this field and Plaintiff's claims are preempted.

Plaintiff summarily concludes that the cases cited by Southwest have nothing to do with the facts of this case. Plaintiff is wrong. First, *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 999 (9th Cir. 2013), where the court ruled that the standard of care was preempted because the ACAA regulations were pervasive on plaintiff's claim that the airlines failed to provide her with wheelchair assistance for moving through the airport,[15] is analogous to Plaintiff's claims here. Here, Plaintiff's claims that the wheelchair pusher "was in a hurry" and "failed to operate the wheelchair in a safe and prudent manner," as in *Gilstrap*, run headlong into the pervasive federal regulations that govern the provision of mobility assistance at airports, including wheelchair services, and the training of, and proficiency required for, those who provide the assistance.

Second, Southwest cited *Lopez v. Jet Blue Airways*, 662 F.3d 593, 598 (2d Cir. 2011); *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018); *Segalman v. Sw. Airlines Co*., 895 F.3d 1219, 1221 (9th Cir. 2018); *Love v. Delta Air Lines*, 310 F.3d 1347, 1359 (11th Cir. 2002) to illustrate the predominant view among the circuit courts that the ACAA does not create a private right of action, including, the 10th Circuit's case for this proposition, *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1268-69 (10th Cir. 2004).[16] These cases are not cited for the purpose of analyzing the preemptive effect of the ACAA regulations on Plaintiff's claims; these cases are cited for the purpose of demonstrating that if a Plaintiff alleges an airline violates a DOT regulation, the district court is not the forum for a remedy. In fact, the preemption arguments are not even made in these appeals. These cases provide another reason why

---

[15] The ACAA and its implementing regulations therefore establish the standard of care — or duty — United owed regarding that activity, preempting any different or higher standard of care that may exist under state tort law. *Id*

[16] In *Boswell*, the Court noted the Congressional establishment of an administrative enforcement scheme for violations of the ACAA. Those claiming to be aggrieved by an alleged ACAA violation can file complaints with the Secretary of Transportation and appeal the Secretary of Transportation's orders to the Court of Appeals. *Id.* at 1269-1270.

Plaintiff's claim is unsustainable here—even if Southwest in some theoretical (yet unproven) scenario was found to have violated DOT regulations in its handling of the wheelchair in question, Plaintiff still could not pursue her claim for relief in this forum. Under the Tenth Circuit's opinion in *Boswell*, Plaintiff is limited to relief available through the administrative enforcement mechanism of the ACAA.

## CONCLUSION

For the reasons set forth above, Plaintiff's claim that Southwest acted without reasonable care is self-serving speculation about how this accident happened. As a result, Plaintiff cannot prove negligence against Southwest in this case and does not even have enough evidence to establish an inference of negligence under res ipsa. In the alternative, because Plaintiff's negligence claim relates to the service and prices provided by Southwest, most notably access to flights through the airlines particular boarding procedures, it is expressly preempted by the ADA. Even if it were not, the claim is nevertheless impliedly field preempted by the ACAA because it implicates a field of aviation that is pervasively regulated by the federal government through the ACAA. By itself, such implied field preemption would not necessarily be case-dispositive. But here it is. That is because plaintiff has not identified a federal standard of care that (a) governed Southwest's conduct and (b) was breached by Southwest.


Dated this 17th day of June, 2020


**W | LAW**

*/s/ Meghan A. Sheridan*
Attorneys for Southwest Airlines Co.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 17th day of June 2020, a true and correct copy of the forgoing

**SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** was filed via the Court's electronic filing system which sent notice to the

following:

Eric Stephenson
**WHITE AND GARNER**
370 E SOUTH TEMPLE #200
SALT LAKE CITY, UT 84111
 eric@utahjustice.com
*Attorneys for Plaintiff*

*/s/ Meghan A. Sheridan*
